**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
CENTRAL ISLIP DIVISION**

|  |  |
|---|---|
| JOHN K. RIVERA,<br><br>     Plaintiff,<br><br>vs.<br><br>HIRERIGHT, LLC,<br><br>     Defendants. | Civil Case No.: 2:26-cv-01664<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

John K. Rivera ("Plaintiff"), by and through his counsel, brings this Complaint against HireRight, LLC ("Defendant" or "HireRight") for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. This action arises from Defendant's preparation and dissemination of a consumer report for employment purposes that contained materially false, misleading, and derogatory information about Plaintiff, including the inaccurate reporting that Plaintiff served jail or prison time in connection with a decades-old North Carolina traffic offense, and the improper attribution of multiple federal civil rights lawsuits belonging to an entirely different individual. Defendant's report further conveyed false and derogatory criminal information that fundamentally and severely mischaracterized Plaintiff's background and history, and was published to Plaintiff's prospective employer in connection with a conditional offer of employment.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

1

2.      Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3.      Defendant reported to Plaintiff's prospective employer that Plaintiff had served jail or prison time in connection with a 1987 North Carolina traffic offense and further identified Plaintiff as a defendant in multiple federal civil rights lawsuits. These representations are materially false, misleading, and objectively inaccurate. They fundamentally mischaracterize the nature of Plaintiff's history and convey a far more serious criminal and civil background than actually exists.

4.      Plaintiff has never served any term of incarceration in connection with the 1987 North Carolina traffic offense and has never been a defendant in any of the federal civil rights lawsuits attributed to him in Defendant's background report.

5.      Plaintiff's prospective employer denied Plaintiff employment as a direct result of a background check report prepared by Defendant, which contained materially false and misleading information, including the representation that Plaintiff served jail or prison time in connection with a 1987 North Carolina traffic offense and the improper attribution of multiple federal civil rights lawsuits that do not belong to Plaintiff.

6.      Defendant's inaccurate reporting would have been readily avoided had Defendant undertaken even a minimal review of the underlying public court records from the Jones County Criminal District Court in North Carolina and the United States District Court for the Eastern District of New York. Such records plainly reflect the true nature of the sentence imposed in the 1987 traffic matter and the identity of the defendant in the federal civil rights lawsuits, and would

have revealed that the information reported did not pertain to Plaintiff prior to the publication of the report to his prospective employer.

7.      Had Defendant performed even a cursory review of the public court records, it would have discovered that any term of confinement reflected in the 1987 traffic case was suspended upon payment of fines and costs, which were paid in full, and that the defendant named in the federal civil rights lawsuits is a different individual, distinguishable by separate identifying information, including a different shield number, and employment history.

8.      Had Defendant conducted even a cursory review of the underlying public court records, it would have discovered that any term of confinement reflected in the 1987 traffic case was suspended upon payment of fines and costs, which were satisfied in full, and that no incarceration was ever imposed or served. Such a review would have further revealed that the defendant identified in the federal civil rights lawsuits is a different individual, distinguishable by readily available identifying information, including a different shield number and employment history.

9.      Plaintiff further notified Defendant of these inaccuracies during a telephone dispute on or about January 12–13, 2026, expressly advising that the federal civil rights lawsuits did not belong to him and that he was being confused with another individual of the same name. Plaintiff also explained that no jail time was ever imposed or served in connection with the 1987 traffic matter, as any reference to confinement reflected a conditional, suspended sentence that would only have been triggered upon nonpayment of fines, which Plaintiff satisfied in full. Accordingly, the report's representation that Plaintiff served jail or prison time was false and materially misleading.

10.     Despite this notice, Defendant failed to correct the inaccurate and misleading

reporting concerning incarceration, even while removing the improperly attributed federal civil rights lawsuits, thereby continuing to publish information that materially misrepresented the true nature of Plaintiff's record.

11.    Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

12.    Defendant's inaccurate report cost Plaintiff a good paying job and job security.

13.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

14.    As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## **PARTIES**

15.    John K. Rivera ("Plaintiff") is a natural person residing in Centereach, New York, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

16.    Defendant HireRight is a consumer reporting agency, as defined by 15 U.S.C. § 1681a(f), with a principal place of business located at 100 Centerview Drive, Ste 300, Nashville, Tennessee 37214.

4

17.     Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

18.     Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

21.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

22.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. §

5

1681.

23.     Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

24.     Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

**THE FCRA'S PROTECTIONS FOR JOB APPLICANTS**

25.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

26.     The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

27.     In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies."  15 U.S.C. §§ 1681a(d) and (f).

28.     The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

29.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

30.     Defendant disregarded its duties under the FCRA with respect to Plaintiff's

6

background check report.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

31.    Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

32.    As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening.  CFPB Report at 4.

33.    The criminal background check industry takes in revenues in excess of three billion dollars, annually.

34.    Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the court records are rarely directly reviewed in creating criminal background checks.

35.    Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources.  The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

36.    Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

---

[1] CFPB, Market Snapshot: Background Dcreening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").

37. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

38. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

39. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

40. Appropriate quality control review of Plaintiff's report would have made clear that the federal civil rights lawsuits attributed to Plaintiff belonged to a different individual and that the 1987 traffic matter did not involve any term of incarceration actually served.

41. As a provider of employment background check reports, Defendant is subject to and should be well-versed in the requirements of the FCRA. Defendant is also a member of the Professional Background Screening Association ("PBSA"), an industry organization that regularly provides training, guidance, and conferences addressing compliance with federal and state consumer reporting laws. Through its participation in PBSA and its experience in the industry, Defendant is well aware that the use of insufficient or overly broad matching criteria can result in the mixing of consumer records. Defendant is therefore on clear notice of the pervasive and well-documented risk of "mixed file" errors and the substantial harm such errors cause when inaccurate information is attributed to the wrong individual.

## FACTS

### Plaintiff Applies for a Job with Cantor Fitzgerald Securities

42. In or around December 2025, Plaintiff applied for full-time employment as an Executive Driver with Cantor Fitzgerald Securities ("Cantor Fitzgerald").

43. On or about December 12, 2025, Cantor Fitzgerald transmitted a pre-offer employment application to Plaintiff as part of the hiring process.

44. Plaintiff timely complied with Cantor Fitzgerald's pre-hire requirements, including submission of requested documentation, completion of Defendant's background screening forms, and scheduling of electronic fingerprinting as part of the employer's compliance process.

45. On or about December 15, 2025, Cantor Fitzgerald extended a written conditional offer of employment to Plaintiff for the position of Executive Driver, with an annual compensation of approximately $120,000, eligibility for benefits, and a regular work schedule of fifty (50) hours per week, contingent upon successful completion of the background and regulatory screening process ("consumer report").

### Defendant Published an Inaccurate Background Check Report to Cantor Fitzgerald

46. Cantor Fitzgerald contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

47. On or about December 17, 2025, Cantor Fitzgerald ordered the first phase of the criminal background check on Plaintiff from Defendant.

48. On or about January 7, 2026, Defendant completed and issued Phase 1 of the background report concerning Plaintiff. Upon information and belief, Phase 1 did not contain the inaccuracies at issue in this action.

49. On or about December 29, 2025, Cantor Fitzgerald Securities initiated Phase 2 of

the background screening process and directed Plaintiff to execute all required documentation and complete fingerprinting as part of that phase.

50. On or about January 13, 2026, while the background screening process was nearing completion, Cantor Fitzgerald notified Plaintiff that the report reflected a 1987 North Carolina matter, Case No. 1987CR000796, indicating "Jail/Prison time imposed: 30 days," and requested that Plaintiff confirm whether the record belonged to him.

51. Plaintiff experienced significant embarrassment and humiliation upon being confronted with this inquiry. He promptly responded that, although the case number corresponded to a 1987 speeding ticket, he had never served any jail or prison time in connection with that matter. Plaintiff further explained that the disposition reflected a conditional sentence under which confinement would only be imposed in the event of nonpayment of fines and costs, and that he satisfied those fines in full. Cantor Fitzgerald advised Plaintiff that it would verify the information with the county court and coordinate with Defendant to correct the record.

52. On or about January 20, 2026, Defendant completed Phase 2 of the consumer report concerning Plaintiff and furnished the report to Cantor Fitzgerald for use in evaluating Plaintiff's employment.

53. Within that consumer report, Defendant published inaccurate information and materially misleading information about Plaintiff.

54. Specifically, Defendant's Phase 2 consumer report about Plaintiff reflected that Plaintiff had 30 days of jail or prison time imposed in connection with a 1987 North Carolina traffic matter and improperly attributed to Plaintiff multiple federal civil rights lawsuits, which appeared in the consumer report as follows:

**1.) Case Nbr.:** 1987CR 000796
**Comments:** Jones County, Criminal District Court
**Identifiers:** Confirmation: Name, Date Of Birth, Address. Name on file: Rivera,John,K

**Count:** 1                           **Severity:** Misdemeanor (or equivalent) - Other misdemea
**Offense Date:** Oct 9, 1987          **Disp. Date:** Nov 6, 1987
**Offense:** 20-141(J1) Speeding 83/55
**Disposition:** Guilty
**Sentence:** Jail/Prison time imposed: 30 days.
Fines, court costs, restitution, fees, and other assessments: Fully paid.

---

**6. Federal Civil (Variable Search Depth)**                    **Complete - Court Record Found**
Rivera, John Kenneth
**Address (es):** Centereach, Eastern District of New York, USA

**Location Searched:** Eastern District of New York

**Time Completed:** Jan 16, 2026 1:47 PM PST

**HireRight Comments:** Jan 2, 2026 11:10 AM PST - Note:
-------Reason: The average turnaround time for a Federal Civil search in this jurisdiction is 2 business days.

Jan 7, 2026 2:32 PM PST - Harris, Matthew - Delay:
-------Reason: A delay has occurred due to additional research required to complete this request and there is no action needed on your part, at this time.
-------Estimated Completion Date: 12-Jan-2026
Jan 13, 2026 7:43 AM PST - Vance, Jen - Delay:
-------Reason: Additional Research is Required to Complete This Request
-------Estimated Completion Date: 16-Jan-2026
Jan 15, 2026 10:32 AM PST - Vance, Jen - Delay:
-------Reason: Additional Research is Required to Complete This Request
-------Estimated Completion Date:21-Jan-2026

---

**1.) Case Nbr.:** 1:2013CV05296
**Comments:** (New York Eastern District Court)
**Identifiers:** Confirmation: Name, Address. Name on file: John Rivera

**Count:** 1                    **Case Type:** Federal Civil - Civils Right: Other
**File Date:** Sep 24, 2013     **Status Date:** Oct 10, 2014
**Amount:**                     **Plaintiff:** Lakeisha Williams, Christine Morely, Ramee Ayesh
**Defendant:** John Rivera Et. Al.
**Status Type:** Dismissed with prejudice

**2.) Case Nbr.:** 1:2015CV03860
**Comments:** (New York Eastern District Court)
**Identifiers:** Confirmation: Name, Address. Name on file: John Rivera

**Count:** 1                    **Case Type:** Federal Civil - Civil Rights
**File Date:** Jul 1, 2015      **Status Date:** Apr 12, 2016
**Amount:**                     **Plaintiff:** Obafemi Owolabi
**Defendant:** John Rivera, Et. Al.
**Status Type:** Dismissed with prejudice

11

**3.) Case Nbr.:** 1:2015CV02784

Request #: HA-010226-B86R9, Completed: Jan 20, 2026 6:59 AM PST

| | | | |
|---|---|---|---|
| **Comments:** | (New York Eastern District) | | |
| **Identifiers:** | Confirmation: Name, Address. Name on file: John Rivera | | |
| **Count:** | 1 | **Case Type:** | Federal Civil - Civil Rights |
| **File Date:** | May 13, 2015 | **Status Date:** | Apr 4, 2016 |
| **Amount:** | | **Plaintiff:** | Megim Demhasaj |
| **Defendant:** | John Rivera Et. Al. | | |
| **Status Type:** | Dismissed with prejudice | | |

**4.) Case Nbr.:** 1:2015CV04017

| | | | |
|---|---|---|---|
| **Comments:** | (New York Eastern District Court) | | |
| **Identifiers:** | Confirmation: Name, Address. Name on file: John Rivera | | |
| **Count:** | 1 | **Case Type:** | Federal Civil - Civil Rights |
| **File Date:** | Jul 8, 2015 | **Status Date:** | Nov 17, 2015 |
| **Amount:** | | **Plaintiff:** | Atonio Jorgensen |
| **Defendant:** | John Rivera, Et. Al. | | |
| **Status Type:** | Dismissed with prejudice | | |

**5.) Case Nbr.:** 1:2010CV04401

| | | | |
|---|---|---|---|
| **Comments:** | (New York Eastern District Court) | | |
| **Identifiers:** | Confirmation: Name, Address. Name on file: John Rivera | | |
| **Count:** | 1 | **Case Type:** | Federal Civil - Civil Rights Acts |
| **File Date:** | Sep 27, 2010 | **Status Date:** | Jun 23, 2011 |
| **Amount:** | | **Plaintiff:** | Kenny Dorcean |
| **Defendant:** | John Rivera Et. Al. | | |
| **Status Type:** | Dismised with prejudice | | |

55.     Plaintiff has never served any term of incarceration in connection with the 1987 North Carolina traffic offense. Any reference to confinement in the court record reflects a conditional, suspended sentence that would only be triggered upon failure to pay fines and costs. Plaintiff satisfied those fines and costs in full, and therefore no incarceration was ever imposed or served. Defendant's reporting to the contrary is outright false and materially misleading.

56.     In addition, the federal civil rights lawsuits entries reported by Defendant about Plaintiff to Cantor Fitzgerald ***do not*** belong to Plaintiff.

57.     Plaintiff has never been a defendant in any of the federal civil rights lawsuits attributed to him in Defendant's Phase 2 background report, as those matters pertain to a different

12

individual who is readily distinguishable by separate identifying information.

58.    A cursory review of readily available public court records confirms that Plaintiff was not the defendant in the federal civil rights lawsuits reported by Defendant and that those cases instead pertain to a different individual named John Rivera ("Defendant Rivera"), who is distinguishable by separate identifying information, including a different shield number and employment history.

59.    Had Defendant undertaken even a minimal review of readily available public court records prior to furnishing its consumer report, it would have determined that Plaintiff did not serve any term of incarceration in connection with the 1987 matter and that the federal civil rights lawsuits attributed to him pertain to a different individual.

60.    The readily apparent discrepancies that should have alerted Defendant that Plaintiff is not the same individual identified in the federal civil rights lawsuits include, but are not limited to, the following:

(a)    Plaintiff's legal name is "John K. Rivera," which includes a middle initial, whereas the federal civil records identify a "John Rivera" without a middle name or initial, as reflected on the face of the consumer report and in readily available public records from Suffolk County, New York;

(b)    Plaintiff's NYPD shield number differs from the shield number reflected in the federal civil rights complaints, which identify a different officer, a discrepancy that is apparent from the underlying records;

(c)    Upon information and belief, Plaintiff's date of birth differed from that of Defendant Rivera;

(d)    Plaintiff possesses a Letter of Good Standing issued by the New York City

13

Police Department confirming his retirement in good standing, which is inconsistent with the extensive civil rights litigation history attributed to him; and

(e)    Plaintiff's Social Security number, which was provided to Defendant and appears on the face of the subject consumer report, is entirely different from that of the individual to whom the federal civil rights lawsuits pertain.

61.    Defendant's reporting reflects the absence of reasonable procedures to assure maximum possible accuracy. Upon information and belief, Defendant relied on a superficial and deficient name-based matching process, which was itself incomplete here. Defendant failed to implement procedures to verify that the identifying information contained in the underlying public records—such as full name, Social Security number, shield number, or other unique identifiers—corresponded to Plaintiff, resulting in the attribution of records belonging to a different individual. Regulatory guidance and industry standards have long made clear that such superficial name matching procedures are not sufficient to constitute reasonable procedures.

62.    Separately, Defendant failed to implement procedures to ensure that the substance of the reported information was conveyed in a complete and non-misleading manner. By reporting that Plaintiff served "jail/prison time" for a minor traffic matter without reviewing or accurately interpreting the underlying disposition, Defendant materially distorted the nature of the record and falsely suggested that Plaintiff had been incarcerated, when in reality any reference to confinement was conditional and never imposed.

63.    Had Defendant followed reasonable procedures, it would have determined that Plaintiff did not serve any term of incarceration in connection with the 1987 matter and that the federal civil rights lawsuits attributed to him pertain to an unrelated individual, distinguishable by

14

a different middle name, shield number, and Social Security number.

64.     In preparing and furnishing a consumer report concerning Plaintiff to his prospective employer, Defendant included materially inaccurate and misleading information and failed to follow reasonable procedures to assure maximum possible accuracy, in violation of 15 U.S.C. § 1681e(b).

65.     Furthermore, Defendant furnished a consumer report concerning Plaintiff for employment purposes that included items of public record, including criminal case information and civil litigation records, which were likely to have an adverse effect on Plaintiff's ability to obtain employment.

66.     At the time Defendant furnished the report to Plaintiff's prospective employer, Defendant was required to comply with 15 U.S.C. § 1681k(a), which mandates that a consumer reporting agency that reports adverse public record information for employment purposes must either (a) notify the consumer contemporaneously of the furnishing of such information, including the name and address of the recipient, or (b) maintain strict procedures to ensure that the public record information is complete and up to date.

67.     Defendant failed to provide Plaintiff with contemporaneous notice that it was furnishing adverse public record information to his prospective employer, including the name and address of the recipient of the report.

68.     Defendant likewise failed to maintain strict procedures to ensure that the public record information reported about Plaintiff was complete and up to date. As alleged herein, Defendant reported materially inaccurate and incomplete public record information, including falsely indicating that Plaintiff served jail or prison time and attributing civil litigation records belonging to a different individual.

69.     Defendant's failure to satisfy either of the statutory alternatives set forth in 15 U.S.C. § 1681k(a) constitutes a violation of the FCRA.

**Cantor Fitzgerald Denies Plaintiff's Job Application**

70.     On or about January 26, 2026, Cantor Fitzgerald notified Plaintiff in writing that it had decided to withdraw his conditional offer of employment, in whole or in part, based upon information contained in a consumer report obtained in connection with his application, including the inaccurate and misleading information reported by Defendant.

71.     Shortly thereafter, Plaintiff obtained a copy of the subject consumer report and was shocked and distressed to discover that multiple federal civil rights lawsuits belonging to a different individual had been attributed to him, and that the report reflected "Jail/Prison time imposed: 30 days" in connection with a 1987 traffic matter, despite the fact that he had never served any term of incarceration.

72.     Plaintiff, deeply distressed and embarrassed by the contents of the report, promptly contacted Cantor Fitzgerald and informed the Company that the federal civil lawsuits reflected in the HireRight report did not belong to him and that he had never served any term of incarceration in connection with the 1987 North Carolina traffic matter. Plaintiff provided supporting documentation, including records concerning the 1987 disposition, his CCRB allegation history, and a Letter of Good Standing from the New York City Police Department confirming his retirement in good standing.

73.     Plaintiff was very panicked, confused, and concerned about the impact that the inaccurate federal civil litigation history and the misleading incarceration entry would have on his professional reputation and future employment opportunities.

74.     Specifically, Defendant attributed to Plaintiff multiple federal civil rights lawsuits

filed against a different individual and reported that Plaintiff had 30 days of jail or prison time imposed in connection with a decades-old traffic matter, without accurately reflecting that no term of incarceration was ever served. The underlying court records reflecting the true disposition of the 1987 matter, as well as the identifying information distinguishing the federal civil defendant from Plaintiff, were readily available prior to Defendant's publication of the consumer report, yet Defendant failed to review or accurately report such information.

**Plaintiff Disputes the Inaccurate Background Check Report with Defendant**

75.    On or about January 12, 2026, Plaintiff telephoned Defendant and disputed the accuracy of the information contained in the consumer report furnished to Cantor Fitzgerald.

76.    During that call, Plaintiff informed Defendant that it had erroneously associated records belonging to a different individual with a similar name—namely, the individual identified in the federal civil rights lawsuits—with Plaintiff. Plaintiff explained that he is not that individual and that the civil litigation history attributed to him did not belong to him and must be removed from his report.

77.    Plaintiff further informed Defendant that he had never served any term of incarceration in connection with the 1987 North Carolina traffic matter. Plaintiff explained that any reference to confinement reflected a conditional disposition under which incarceration would only be imposed upon failure to pay fines and costs, and that he satisfied those fines in full.

78.    Plaintiff advised Defendant that its reporting of "jail/prison time" was false and materially misleading, as it conveyed that Plaintiff had served a custodial sentence when, in fact, no incarceration was ever imposed or served.

79.    Plaintiff further advised Defendant that the 1987 traffic infraction did not result in a misdemeanor conviction, as any such classification and associated incarceration were conditional

17

upon nonpayment of fines, which Plaintiff satisfied in full. Plaintiff therefore explained that no misdemeanor conviction or incarceration was ever imposed, rendering Defendant's reporting false and materially misleading.

**Defendant's Failure to Reasonably Reinvestigate Plaintiff's Dispute and Failure to Correct the Inaccurate Information Reported**

80.    Upon receiving Plaintiff's dispute on or about January 12, 2026, Defendant was required, pursuant to 15 U.S.C. § 1681i(a), to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate.

81.    Plaintiff provided Defendant with specific and detailed information identifying the inaccuracies in the report, including that the federal civil rights lawsuits did not belong to him and that he had never served any term of incarceration in connection with the 1987 North Carolina traffic matter.

82.    Although Defendant removed the improperly attributed federal civil rights lawsuits following Plaintiff's dispute, it failed to correct the inaccurate and misleading reporting concerning the 1987 North Carolina traffic matter. Defendant continued to report that Plaintiff was imposed "jail/prison time: 30 days" and that the offense constituted a misdemeanor, despite Plaintiff's express dispute explaining that no incarceration was ever imposed or served and that any reference to confinement was conditional upon nonpayment of fines, which were satisfied in full.

83.    Defendant's failure to correct this information demonstrates that it did not conduct a reasonable reinvestigation as required by 15 U.S.C. § 1681i(a). A reasonable reinvestigation would have required Defendant to review the underlying court records and determine whether the disposition was being accurately and non-misleadingly reported. Instead, Defendant continued to publish information that falsely portrayed Plaintiff as having served a custodial sentence and as having been convicted of a misdemeanor offense, when in reality no incarceration occurred and

18

the reported disposition of a misdemeanor was an outright falsehood. Defendant continued reporting the following as of February 24, 2026:

**1.) Case Nbr.:** 1987CR 000796
**Comments:** Jones County, Criminal District Court
**Identifiers:** Confirmation: Name, Date Of Birth, Address. Name on file: Rivera,John,K

| | | | |
|---|---|---|---|
| **Count:** | 1 | **Severity:** | Misdemeanor (or equivalent) - Other misdemeanor |
| **Offense Date:** | Oct 9, 1987 | **Disp. Date:** | Nov 6, 1987 |
| **Offense:** | 20-141(J1) Speeding 83/55 | | |
| **Disposition:** | Guilty | | |
| **Sentence:** | Jail/Prison time imposed: 30 days. | | |
| | Fines, court costs, restitution, fees, and other assessments: Fully paid. | | |

84.    Upon receiving Plaintiff's dispute, Defendant was required, pursuant to 15 U.S.C. § 1681i(a)(2), to provide prompt notice of the dispute to any person that furnished the disputed information, including all relevant information received from Plaintiff regarding the nature of the dispute.

85.    Specifically, Defendant failed to provide the source of the disputed information with all relevant information regarding Plaintiff's dispute, including Plaintiff's explanation that the federal civil rights lawsuits did not belong to him and that no term of incarceration was ever imposed or served in connection with the 1987 traffic matter.

86.    Following its reinvestigation, Defendant was further required, pursuant to 15 U.S.C. § 1681i(a)(5), to delete or modify any information that was inaccurate, incomplete, or could not be verified.

87.    Despite Plaintiff's dispute and the readily available public records confirming the true nature of the 1987 disposition, Defendant failed to delete or modify the inaccurate and misleading reporting that Plaintiff served jail or prison time and that the offense constituted a misdemeanor.

88.    Defendant's failure to correct or delete this information, despite its inability to

19

verify that the information was accurate, complete, and not misleading, constitutes a violation of 15 U.S.C. § 1681i(a)(5).

89.   Plaintiff reasonably believes that, as a result of Defendant's inaccurate reporting, Cantor Fitzgerald formed a negative impression of Plaintiff and, in whole or in part, declined to proceed with his candidacy or considered other applicants.

90.   Defendant's inaccurate and misleading consumer report, which it refused to correct, was a direct and proximate cause of the withdrawal of Plaintiff's conditional offer of employment with Cantor Fitzgerald.

91.   The position offered to Plaintiff was a full-time Executive Driver role with annual compensation of approximately $120,000, based on a 50-hour workweek, and included eligibility for company benefits, discretionary bonus compensation, and paid vacation.

92.   The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

93.   As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

94.   As a direct result of Defendant's conduct, Plaintiff lost a conditional offer of

20

employment with Cantor Fitzgerald for a full-time Executive Driver position offering approximately $120,000 in annual compensation (approximately $2,307.70 gross weekly based on a 50-hour workweek), along with eligibility for discretionary bonus compensation, medical, dental, life, disability, and 401(k) benefits, and paid vacation. The offer was withdrawn on January 26, 2026 after Cantor Fitzgerald relied on Defendant's inaccurate and misleading background report, which falsely indicated that Plaintiff served a term of incarceration in connection with a 1987 traffic matter and improperly attributed multiple federal civil rights lawsuits to him.

95. Plaintiff is presently employed on a per-diem basis as an executive protection agent for T&M Protection LLC, earning approximately $55 per hour when work is available, without a guaranteed or consistent schedule. He also lost paid work time while addressing and disputing the reporting errors. As the sole income earner supporting his wife, six children, including one attending college, and a father-in-law requiring full-time care due to dementia, the loss of this employment opportunity has caused substantial financial strain, ongoing economic instability, and significant emotional distress, including stress, anxiety, and reputational harm within his profession.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

96. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

97. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

98. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

99.     At all times pertinent hereto, the above-mentioned consumer report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

100.    Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

101.    As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

102.    Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

103.    Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

104.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
### 15 U.S.C. § 1681i
### Failure to Conduct a Reasonable Reinvestigation and Correct Inaccurate Information

105.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the

22

preceding paragraphs as if fully stated herein.

106.    Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

107.    At all times relevant hereto, Plaintiff was a "consumer" as defined by 15 U.S.C. § 1681a(c).

108.    At all times relevant hereto, the report at issue constituted a "consumer report" as defined by 15 U.S.C. § 1681a(d).

109.    Plaintiff disputed the accuracy and completeness of the information contained in Defendant's consumer report, including the misattribution of federal civil rights lawsuits and the inaccurate and misleading reporting that Plaintiff served jail or prison time in connection with a 1987 traffic matter.

110.    Upon receipt of Plaintiff's dispute, Defendant was required, pursuant to 15 U.S.C. § 1681i(a)(1), to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate, incomplete, or could not be verified.

111.    Defendant failed to conduct a reasonable reinvestigation.

112.    Defendant further failed to comply with 15 U.S.C. § 1681i(a)(2) by failing to provide the furnisher of the disputed information with all relevant information regarding Plaintiff's dispute, including Plaintiff's explanation that the federal civil lawsuits did not belong to him and that no incarceration was ever imposed or served in connection with the 1987 matter.

113.    Defendant also failed to comply with 15 U.S.C. § 1681i(a)(5) by failing to delete or modify information that was inaccurate, incomplete, misleading, or could not be verified as accurate.

114.    Although Defendant removed certain inaccurate information following Plaintiff's dispute, including the improperly attributed federal civil rights lawsuits, it failed to correct the

23

inaccurate and misleading reporting concerning the 1987 traffic matter.

115.    Defendant continued to report that Plaintiff was imposed "jail/prison time: 30 days" and that the offense constituted a misdemeanor, despite Plaintiff's dispute and the readily available public records confirming that no incarceration was ever imposed or served and that the reporting was materially misleading as presented.

116.    Defendant's failure to correct or delete this information demonstrates that it did not determine that the information was accurate, complete, and not misleading, and instead continued to report information that was inaccurate, incomplete, and incapable of verification in its reported form.

117.    As a direct and proximate result of Defendant's violations of 15 U.S.C. § 1681i(a), Plaintiff suffered actual damages, including but not limited to: loss of employment opportunities, wages, and benefits; loss of future economic opportunities; lost time and income addressing and disputing the inaccuracies; damage to his reputation; and emotional distress, including mental anguish, anxiety, humiliation, and frustration.

118.    Defendant's violations of 15 U.S.C. § 1681i(a) were willful. Defendant knew or should have known that failing to conduct a meaningful reinvestigation, failing to transmit the substance of Plaintiff's dispute, and continuing to report information in a misleading and unverifiable manner created a substantial risk of harm to Plaintiff, yet acted in reckless disregard of its statutory obligations.

119.    Alternatively, Defendant's conduct was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

120.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

24

## COUNT III
## 15 U.S.C. § 1681k
## Failure to Comply with Requirements for Public Record Information Used for Employment Purposes

121.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

122.    Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

123.    At all times relevant hereto, Plaintiff was a "consumer" as defined by 15 U.S.C. § 1681a(c).

124.    At all times relevant hereto, the report at issue constituted a "consumer report" as defined by 15 U.S.C. § 1681a(d), and was furnished for employment purposes.

125.    Defendant furnished a consumer report concerning Plaintiff for employment purposes that included items of public record, including criminal case information and civil litigation records, which were likely to have an adverse effect on Plaintiff's ability to obtain employment.

126.    Pursuant to 15 U.S.C. § 1681k(a), Defendant was required to either: (a) notify Plaintiff, contemporaneously with the furnishing of the report, that it was reporting public record information and provide the name and address of the recipient; or (b) maintain strict procedures designed to ensure that the public record information was complete and up to date.

127.    Defendant failed to provide Plaintiff with contemporaneous notice that it was furnishing adverse public record information to his prospective employer.

128.    Defendant further failed to maintain strict procedures to ensure that the public record information reported about Plaintiff was complete and up to date.

129.    As alleged herein, Defendant reported public record information that was inaccurate, incomplete, and misleading, including falsely indicating that Plaintiff served jail or

prison time in connection with a 1987 traffic matter and attributing civil litigation records belonging to a different individual to Plaintiff.

130. Defendant's failure to maintain strict procedures is further demonstrated by its failure to properly match public records to the correct individual and to accurately reflect the true disposition and nature of the reported information.

131. By failing to provide the required notice and by failing to maintain strict procedures to ensure that the reported public record information was complete and up to date, Defendant violated 15 U.S.C. § 1681k(a).

132. As a direct and proximate result of Defendant's violations of 15 U.S.C. § 1681k(a), Plaintiff suffered actual damages, including but not limited to: loss of employment opportunities, wages, and benefits; loss of future economic opportunities; damage to his reputation; and emotional distress, including mental anguish, anxiety, humiliation, and frustration.

133. Defendant's violations of 15 U.S.C. § 1681k(a) were willful. Defendant knew or should have known that reporting adverse public record information for employment purposes without providing notice or maintaining strict procedures created a substantial risk of serious harm to consumers, yet acted in reckless disregard of its statutory obligations.

134. Alternatively, Defendant's conduct was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

135. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs pursuant to 15 U.S.C. §§ 1681n and 1681o.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court enter a judgment awarding Plaintiff actual

damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs and awarding Plaintiff such other and furth relief as the Court may deem appropriate and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: New York,
March 20, 2026

*/s/ Meir Rubinov*
Meir Rubinov, NY Bar # 6077887
CONSUMER ATTORNEYS
68-29 Main Street
Flushing NY 11367
T: 718-640-8123
F: (718) 247-8020
E: mrubinov@consumerattorneys.com

*Attorneys for Plaintiff*
*John K Rivera*

27